UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Three Peas In A Pod, LLC | Civil Action No. 6:15-02296 |
| versus | Magistrate Judge Carol B. Whitehurst |
| ABABY, Inc., et al | By Consent of The Parties |

**MEMORANDUM ORDER**

Before the Court is Defendant, PayPal, Inc.'s ("PayPal"), Motion To Dismiss the plaintiff's claims against it for breach of contract pursuant to Fed. R. Civ. P. 12(b)(6) [Rec. Docs. 46, 47], as well as PayPal's Supplement Memorandum In Support of Its Motion To Dismiss [Rec. Doc. 58] and Plaintiff, Three Peas In A Pod, LLC's ("Three Peas"), Opposition Memorandum [Rec. Doc. 55]. For the reasons that follow, the Motion To Dismiss will be granted.

*I. Factual And Procedural Background*

Plaintiff, Three Peas, filed this petition on open account and action for breach of contract in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana against Defendant, ABABY, Inc. ("ABABY") and several other now terminated defendants. On August 27, 2015, ABABY removed this action pursuant to the Court's diversity jurisdiction. On April 7, 2016, Three Peas amended its original state court petition, adding Defendant, PayPal. *R. 41, Amended Compl.*

Three Peas manufactures and sells blankets and shower curtains. *R. 1,¶¶ 2-3*. In November 2014, ABABY placed a large order with Three Peas. *Id., ¶ 5*. Three Peas began manufacturing and shipping the product in compliance with the order. On December 23, 2014, after Three Peas shipped 240 shower curtains and 1,170 fleece

blankets, ABABY sent an email to Three Peas to stop production of the remainder of the order and only send what ABABY had already paid for. *Id. ,¶ 12.* Three Peas complied with this request. *Id.* ¶ *13.* Three Peas alleges it sent ABABY $307,260 in merchandise and ABABY paid Three Peas $307,710 with its credit cards through PayPal. *Id., ¶¶ 14–16.*

Three Peas alleges that after transmitting the payments, ABABY falsely caused Three Peas' PayPal account to "chargeback" over $70,000 by claiming it failed to receive merchandise already paid for, which caused Three Peas' PayPal account to reflect a negative balance of over $70,000. *Id., ¶ 16.* Three Peas alleges that ABABY's "assertions and claims made to PayPal are false and inaccurate." *Id.* Three Peas asserts a breach of contract claim against PayPal for the chargebacks alleging PayPal should have investigated the chargebacks before acting. *R.41, Amended Compl., ¶ 25.* Three Peas seeks to recover from PayPal "the chargeback amounts charged to [its] PayPal account." *R. 41.*

PayPal filed this Motion on June 17, 2016, arguing there is "no possibility" that Three Peas can establish breach of the contract between PayPal and ABABY. Three Peas filed a Second Amended Complaint on July 12, 2016, *R. 54*, and PayPal filed a Supplement Memorandum in Support of its Motion on July 26, 2016. *R. 58.* Based on the Second Amended Complaint and PayPal's Supplemental Memorandum the Court reset the hearing on the Motion. *R. 62.* Thereafter, Three Peas' filed a motion to continue the hearing which the Court granted and ordered that the Court would decide the Motion based on the parties' briefs. *R. 64.*

*II. Legal Standard*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir.2007). In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the sufficiency of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are "well pleaded " rather than to resolve the disputes or possible arguments suggested by, or, surrounding those facts. The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556. Stated differently, the jurisprudence instructs that if a plaintiff fails to allege, in his/her pleadings, facts sufficient to "nudge [his or her] claims across the line from conceivable to plausible, [his or her] complaint must be dismissed." *Mitchell v. Johnson*, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 550 U.S. at 570).

When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (finding consideration of insurance contracts unattached to the complaint permissible where they were attached to the motions to dismiss, referred to in the complaint, and central to the plaintiffs' claims).

### III. Analysis

It is undisputed that the PayPal User Agreement is the "contract" between Three Peas and PayPal that applies to Three Peas' "use of the PayPal Services." *R. 46-3, Exh. C, p. 1.*[1] PayPal asserts there is "no possibility" that Three Peas can establish any breach of the User Agreement by PayPal because the User Agreement: (1) plainly defines "Chargebacks;" (2) unequivocally states that "the credit card issuer, not PayPal, will determine who wins the chargebacks;" (3) defines PayPal's rights when a chargeback is initiated by a buyer and under review by the buyer's credit card issuer; and, (4) fully discloses the risk of chargebacks to PayPal's users, as follows:[2]

---

[1] Exhibits C and D, attached to PayPal's Motion To Dismiss, are the cited relevant portions of the User Agreements in effect during the relevant time period of April 3, 2015 through June 11, 2015, when the chargebacks in question occurred. As the cited portions are identical, the Court will refer only to Exhibit C. *R. 46-3*.

[2] The User Agreement advises of the risk of chargebacks to seller as follows:
> Payments received in Your Account may be reversed at a later time, for example, if such a payment is subject to a Chargeback, Reversal, Claim or is otherwise invalidated. This means that for some of our sellers, payments received into their Accounts may be returned to the sender or otherwise removed from their Account after they have been paid and/or delivered any goods or services sold.

*R. 46-3.*

- "Chargebacks" are "request[s] that a buyer files directly with his or her debit or credit card company or debit or credit card issuing bank to invalidate a payment." *R. 46-1, User Agreement, § 4.4.*

- "If a sender of a payment files a chargeback, the credit card issuer, not PayPal, will determine who wins the Chargeback." *Id.*

- "If a User files a Dispute, Claim, Chargeback or Reversal on a payment you received, PayPal may place a temporary hold on the funds in your Account to cover the amount of the liability. . . . If you lose the dispute, PayPal will remove the funds from your Account." *Id at § 10.5(b).*

- *"*Please note the following risks of using the PayPal Services, which are set forth in more detail in the relevant sections of the Agreement: Payments received in your Account may be reversed at a later time, for example, if such a payment is subject to a chargeback, Reversal, Claim or is otherwise invalid. This means that for some of our Sellers, payments received into their Account may be returned to the sender or otherwise removed from their Account after they have been paid and/or delivered and goods or services sold."*Id at p. 1.*

- "4.4 Risk of Reversals, Chargebacks and Claims. . . . If a sender of a payment files a Chargeback, the credit card issuer, not PayPal, will determine who wins the Chargeback." *Id at § 4.4.*

Three Peas argues that while the User Agreement does advise of the risk of chargebacks to sellers such as Three Peas, none of the provisions cited by PayPal explicitly state, nor convey to the seller that PayPal intends to play no investigative role with respect to the chargeback. *R. 55.* It asserts that PayPal's Motion fails "because it ignores the implied covenant of good faith and fair dealing inherent in every contract." Three Peas submits that its Second Amended Complaint "clarifies the allegations against PayPal" and "provides a more definite statement of the allegations" supporting its breach of contract claim.

In a diversity case such as this, the Court applies the choice of law rules of the forum state in determining which state's substantive law to apply. *See Mumblow v.*

5.

*Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir.2005). Louisiana's general choice of law provision directs that the applicable law on any issue is "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. C. C. art. 3515. Specifically regarding contracts, the Code instructs courts to assess the strength of the relevant policies of the involved states in light of the place of negotiation, formation, and performance of the contract as well as the location of the object of the contract. La. Civ.Code art. 3537.

PayPal submits that Delaware law applies to Three Peas' breach of contract claim but also submits that Louisiana law is in accord with Delaware's breach of contract law. Three Peas does not indicate which law applies. Neither party addresses the Louisiana choice-of-law provision. "Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) breach of that obligation by the defendant; and (3) resulting damage to plaintiff." *H-M Wexford LLC v. Encorp, Inc.* 832 A.2d 129, 140 (Del. Ch. 2003). "Under Louisiana law, '[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.'" *Boudreaux v. Flagstar Bank FSB*, 623 Fed.Appx. 235, 237 (5th Cir. 2015) (quoting *Favrot v. Favrot*, 68 So.3d 1099, 1108–09 (La.Ct.App.2011). See 28 U.S.C. § 1332(a) (1). As these two laws are substantially similar, there is no conflict between them and the Court need not undertake a choice-of-law analysis. *R.R. Mgmt. Co.v. CFS La. Midstream Co.*, 428

F.3d 214, 222 (5th Cir. 2005). Thus, this Court will apply the forum law of Louisiana in addressing the issues before the Court.

PayPal asserts that Three Peas cannot identify "any term of the User Agreement that creates any obligation/duty owed by PayPal to Three Peas relating to chargebacks." PayPal contends that Three Peas instead attempts to "mischaracterize and strain" sections of the User Agreement to infer such an obligation/duty. It also contends that Paragraphs 25–28 of the Second Amended Complaint are <u>not</u> part of the User Agreement, but instead are general statements made on PayPal's website. *R. 46-2, www.paypal.com.*

In Paragraph 25, Three Peas alleges that "[t]he User Agreement states on Page 1 that a Seller can help protect from the risk of a payment being reversed from its account by following guidance proved in the Security and Protection page accessible on PayPal, Inc.'s website...." *R. 54, ¶ 25*. Three Peas then alleges that this statement "thereby incorporat[es] the terms and provisions of the Security and Protection Page into the User Agreement." *Id.* Thereafter, in Paragraphs 26, 27 and 28, Three Peas quotes PayPal's website related to its Seller Protection, *Id at ¶¶ 27–28*, and concludes PayPal "breached the expressed terms of the User Agreement by not properly or sufficiently investigating the chargebacks.... before charging back plaintiff's PayPal account." *Id at ¶ 28*.

The record reveals, as asserted by PayPal, that the portions of the website Three Peas cites and quotes in Paragraphs 25 through 27 generally describe the "Seller Protection for Merchants' that PayPal provides to sellers, contractual rights that are

7.

fully and plainly defined in Section 11 of the User Agreement at pages 20 through 22." *R. 58, p. 4*. To be eligible for Seller Protection under Section 11 of the User Agreement for chargebacks relating to "items not received," *R. 46-3, § 11.4, p 21*, Three Peas would be required to submit to PayPal "proof of delivery" of the shipments which includes documentation establishing that the shipment was in fact delivered and signature confirmation of delivery of the shipping. *Id at pp. 21–22.* Three Peas admits ABABY <u>refused shipment</u> of those goods <u>and they were returned</u> to Three Peas. Thus, Three Peas could not have submitted the confirmation of delivery necessary to be eligible for Seller Protection. Further, the record reveals that Three Peas has not alleged in any complaint that it sought or met the requirements to be eligible for Seller Protection. As Three Peas was not eligible for Seller Protection under Section 11 of the User Agreement, PayPal could not have breached any contractual duty owned to Three Peas related to the Seller Protection provision.

In Paragraphs 29 through 31, Three Peas alleges PayPal breached contractual duties under Section 4.3 of the User Agreement, "Payment Review," which provides in pertinent part:

> PayPal will place a hold on the payment and provide notice to the Seller to delay shipping of the item. PayPal will conduct a review and either clear or cancel the payment. If the payment is cleared, PayPal will provide notice to the Seller to ship the item. Otherwise, PayPal will cancel the payment and funds will be returned to the buyer.

*R. 46-3, § 4.3*. PayPal argues this provision applies to review of a payment **before** the funds are placed into the Seller's account. It does not create any duties once funds have been placed into the Seller's account and made available to the Seller. Here,

8.

Three Peas alleges it received $307,710 from ABABY. Three Peas has failed to state a plausible claim that PayPal breached § 4.3 of the User Agreement.

In Paragraphs 32 through 36 Three Peas alleges that PayPal has breached its duties under Sections 9 and 10 of the User Agreement. PayPal argues that Sections 9 and 10 "do not create any duties owed by PayPal to Three Peas." *R. 58, p. 6*. Upon review, Section 9.1 defines the activities of a user of PayPal's services that are prohibited. Section 9.1 states, "In connections with your use of our website, your Account, the PayPal services, or in the course of your interaction with PayPal, other Users, or third parties, you will not [engage in the following restricted enumerated activities]." *R. 46-3, § 9.1*. Section 10 further defines the actions PayPal may take in the event Three Peas (or ABABY, or any user) breached the User Agreement. *Id at § 10.1.* Thus, Section 9 defines the duties that Three Peas owes to PayPal and Section 10 defines actions PayPal may take if Three Peas breaches any duties it owes to PayPal – not vise-versa. PayPal had no duty under § 9 or § 10 which could have been breached.

In Paragraphs 37 through 39 of the Second Amended Complaint, Three Peas alleges PayPal breached duties arising out of Section 11 of the User Agreement, the section defining "Protection for Sellers" —the same provision as the allegations in Paragraphs 25 through 28, discussed above. To reiterate, the Court found that Three Peas was not eligible for Seller Protection nor did Three Peas allege that it sought to avail itself of any contractual right to Seller Protection.

Three Peas alleges in Paragraphs 40 through 48 that PayPal breached the implied obligation of good faith and fair dealing by not properly investigating whether a chargeback was warranted or appropriate before reversing payments received in Three Peas' PayPal Account. It is well settled that "Louisiana does not recognize a separate and distinct obligation of good faith, the breach of which would be equivalent to a breach of the contract between the parties. The performance of an obligation or contract can be characterized as being in good faith or bad faith, but the party alleging bad faith performance must first allege facts revealing the duty to perform an obligation." *Gulf Coast Bank and Trust Co. v. Warren*, 125 So.3d 1211, 1219 (La.App. 4 Cir., 2013). In other words, "The implied obligation to execute a contract in good faith usually modifies the express terms of the contract and should not be used to override or contradict them." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 485 (5th Cir.1984). Thus, in order to state a claim for breach of an implied duty of good faith and fair dealing relating to chargebacks Three Peas must identify a contractual obligation or duty under the User Agreement owed by PayPal related to the chargebacks.

In Paragraphs 41, 43, 45, 46, 47 and 48 of the Second Amended Complaint, Three Peas alleges PayPal breached the implied covenant of good faith and fair dealing by not properly: (1) investigating whether a charge back was warranted or appropriate; (2) determining whether ABABY had chargeback rights prior to reversing payments received in Three Peas' Account; (3) determining the nature and extent of ABABY's chargeback rights; (4) providing Three Peas with notice of the

chargebacks; (5) advising Three Peas of its rights regarding a chargeback situation; and (6) advising Three Peas whether the transactions subject to the chargebacks were eligible for Seller Protection as defined by the User Agreement. *R. 54, ¶¶ 41-48*.

As provided in the foregoing, the User Agreement imposes no obligation on PayPal to investigate or make a final determination regarding the appropriateness of chargebacks. Nor is there any obligation imposed on PayPal to advise sellers, such as Three Peas, of its "rights" if a buyer, such as ABABY, initiates a chargeback with the buyer's credit card issuer. The User Agreement does, however, provide notice at Section 10.5(b) that if a chargeback is initiated on a payment that has been received "PayPal may place a temporary hold on the funds in your account to cover the amount of the liability. . . . If you lose the dispute, PayPal will remove the funds from your Account."

Finally, there is no provision of the User Agreement which imposes an obligation on PayPal to advise Three Peas of its Seller Protection rights enumerated in Section 11 of the User Agreement. Rather, the User Agreement states,"If a sender of a payment files a Chargeback, the credit card issuer, not PayPal, will determine who wins the Chargeback." *46-3, § 4.4*. Three Peas cannot use the implied duty of good faith and fair dealing to create and impose an obligation or duty on PayPal to make the determinations alleged regarding the appropriateness of chargebacks.

### IV. Conclusion

Based on the foregoing analysis, the Court finds that Three Peas has failed to plead that PayPal breached either any express term of the User Agreement or any

implied duty of good faith and fair dealing arising out of any term of the User Agreement. The Court will dismiss Three Peas' claims against PayPal for failure to state a claim in its Second Amended Complaint. Accordingly,

**IT IS ORDERED** that PayPal, L.L.C.'s Motion To Dismiss [Rec. Doc. 46] is **GRANTED**.

**THUS DONE AND SIGNED** this 6th day of October, 2016 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE